FILED

2009 Mar-20  PM 01:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CLARENCE HARRIS,                    ]
                                    ]
        Plaintiff,                  ]
                                    ]
    vs.                             ]    2:08-CV-00312-LSC
                                    ]
COUNTRYWIDE HOME LOANS, INC.,       ]
et al.,                             ]
                                    ]
        Defendants.                 ]

MEMORANDUM OF OPINION

I.    Introduction.

        The Court has for consideration motions for summary judgment filed

by defendants Countrywide Home Loans, Inc. ("Countrywide"),  Ocwen Loan

Servicing, LLC ("Ocwen") (Doc. 41), National Real Estate Information

Services, Inc. ("NREIS"), and Wendy C. Boorsma ("Boorsma") (Doc. 40).

Plaintiff Clarence Harris filed suit against the defendants in the Circuit Court

of Jefferson County, Alabama, on February 14, 2008.   Plaintiff alleged

claims for breach of contract; fraudulent suppression and misrepresentation;

and rescission under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635.

The action was removed to this Court on February 21, 2008.  The issues
raised in Defendants' motions for summary judgment have been briefed by
all parties[1] and are now ripe for decision.   Upon due consideration,
Defendants' motions for summary judgment will be granted in all respects.

II.    Facts.[2]

Plaintiff Clarence Harris ("Harris" or "Plaintiff") purchased his home
twenty-two years ago for approximately $54,500.00.  While Plaintiff is now
disabled and was unemployed at all times relevant to this lawsuit, Plaintiff
once served in the U.S. Air Force and the Army National Guard.  He received
an undergraduate degree in business from the University of Maryland, and

---

[1]On February 10, 2009, Plaintiff filed an unopposed motion to clarify his response
brief and correct typographical errors.  (Doc. 69.)  Plaintiff's motion is GRANTED.
     On February 13, 2009, Countrywide and Ocwen filed a motion for leave to include
excess pages in their reply brief.  (Doc. 70.)  It appears to the Court that the defendants
filed a reply brief that complies with this Court's Uniform Initial Order and extra pages
were not needed.  Therefore, this motion is MOOT.

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts
claimed to be undisputed, their respective responses to those submissions, and the
Court's own examination of the evidentiary record.  All reasonable doubts about the
facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks
Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for
summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r
U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

a master's degree in psychology from Columbia State University. It is undisputed that he can speak, read, and understand the English language.

In August 1997, Harris signed a 3-year fixed-rate, 27-year adjustable-rate mortgage on his home with Molton, Allen, and Williams Corporation. Harris also testified he held a mortgage with "Old Canal." After watching a Countrywide commercial on television, Harris called Countrywide in October 2005, to discuss refinancing. On December 17, 2005, Plaintiff applied on the phone for a 9.5%, 30-year fixed-rate mortgage loan with Countrywide employee, Peter Mazeika ("Mazeika"). Harris disclosed his personal and financial information, including a prior bankruptcy, and mailed Countrywide his Social Security income statement and information about his veteran's benefits.

While his loan application listed the value of Harris's property as $120,000, an appraisal obtained by Countrywide valued the home at $107,000. Countrywide subsequently modified the terms of Harris's loan. Harris contends he was not aware of these modifications and believed he was going to obtain a 9.5%, 30-year fixed-rate mortgage.

Countrywide contracted with NREIS to close Harris's loan.  NREIS hired Wendy Boorsma, a traveling notary, to contact Harris and get his signatures on the closing documents.  It is undisputed that Boorsma was not given any instructions authorizing her to make representations about the terms of Harris's loan.

Boorsma met Harris at Jack's restaurant to close the loan on January 20, 2006.  She testified she printed two copies of the closing documents prior to the meeting.   Harris signed the closing documents without reading them.  He testified he asked Boorsma if the loan was a 9.5%, fixed-rate loan and she told him it was.  Boorsma testified she did not know anything about the loan terms and only would have read what was listed in the documents. The meeting was over after twenty to twenty-five minutes.  Harris said Boorsma told him she was in a hurry because she had a sick family member. Harris signed documents for a 10%, 2-year fixed-rate, 28-year adjustable-rate mortgage with Ocwen.  Boorsma testified she gave Harris a copy of the unsigned closing documents before he left the restaurant.  Harris denies he received a copy and says Boorsma informed him he would receive copies in the mail after they were signed by the settlement agent.

Ocwen later assigned Harris's mortgage and adjustable rate note to Countrywide.   In December 2006, Harris contacted Countrywide and informed them he did not receive a copy of his closing documents; Countrywide subsequently mailed a copy of the loan file.  Harris admits he received a copy of his loan file, including the Adjustable Rate Note, Schedule of Real Estate owned, Document Certification and Agreement, Adjustable Rate Rider, Mortgage, HUD-1 Settlement Statement, Appraisal Disclaimer, Loan Application, Notice of Right to Cancel, Itemization of Amount Financed, and the Federal Truth in Lending Disclosure Statement, in December 2006.  On March 12, 2007, Harris mailed Countrywide a letter entitled "Qualified Written Request."  On November 8, 2007, Harris mailed a letter to Countrywide labeled "Notice of Rescission" and requested that his loan be rescinded.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the

nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

     A.   TILA.

In his Complaint, Plaintiff contends that he is entitled to rescission of his mortgage loan under TILA because Defendants failed to provide "true disclosure of the credit terms" and "failed to deliver the recision forms." (Compl. at 9.)   Defendants argue that they are entitled to summary judgment on Plaintiff's TILA claim because, assuming Harris was not provided the requisite information and documents at closing on January 20, 2006, he failed to provide notice within three business days of their delivery in December 2006.   Harris maintains that he has three years from the date of closing to give notice, and he did so in November 2007.

"Under the Truth in Lending Act, 82 Stat. 146, 15 U.S.C. § 1601 *et seq.*, when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms

accurately." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411 (1998).  "The

declared purpose of the Act is 'to assure a meaningful disclosure of credit

terms so that the consumer will be able to compare more readily the various

credit terms available to him and avoid the uninformed use of credit, and

to protect the consumer against inaccurate and unfair credit billing and

credit card practices.'" *Id.* at 412 (quoting 15 U.S.C. § 1601(a)).

"Accordingly, the Act requires creditors to provide borrowers with clear and

accurate disclosures of terms dealing with things like finance charges,

annual percentage rates of interest, and the borrower's rights." *Id.*  Under

TILA, the borrower may "rescind the loan transaction entirely 'until

midnight of the third business day following the consummation of the

transaction or the delivery of the information and rescission forms required

under this section together with a statement containing the material

disclosures required under this subchapter, whichever is later.'" *Id.*

(quoting 15 U.S.C. § 1635(a)).

Harris contends that because he testified these documents were not

given to him at the time of closing, he has three years from the date of

closing to rescind.  He cites 15 U.S.C. § 1635(f), which provides that "[a]n

obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . ." Section 1635(f) does not stand for the proposition Harris suggests. Section 1635(f) provides an "end date"—a time beyond which a borrower or obligor cannot exercise the right to rescind, even if they never received their documents (except in situations involving agency enforcement that do not apply in this case); it does not bestow an automatic three-year limitation period if certain documents or disclosures are not delivered at the time of closing.

Section 1635(a) is clear that the right to rescind extends three business days from the date of (1) "consummation of the transaction *or* [(2)] the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter . . . ." 15 U.S.C. § 1635(a) (emphasis added).  The subsequent phrase, "whichever is later," shows legislators clearly contemplated that delivery of the requisite disclosures and documents may

occur after the date of closing.  *Id.*; *see also, e.g.*, *Smith v. Highland Bank*, 108 F.3d 1325 (11th Cir. 1997) (noting "the debtor's right to rescind is extended for *up to* three years after the transaction is complete") (emphasis added); *Smith v. Wells Fargo Credit Corp.*, 713 F. Supp. 354, (D. Ariz. 1989) (acknowledging that the three day rescission period "will not expire until three business days after the correct disclosure is finally provided or until the earlier of three years after consummation") (citing Rohrer, The Law of Truth in Lending (1984) at 8-33); *Peterson v. Argent Mortgage Co.*, 2007 WL 1725355 (D. Minn. 2007).  Harris admits that his loan file, which included the Notice of Right to Cancel, Itemization of Amount Financed, and the Federal Truth in Lending Disclosure Statement, was delivered to him in December 2006.  Therefore, if the loan file contained the required disclosures and documents, Harris had until midnight on the third business day following their delivery, pursuant to § 1635(a), to rescind the loan.

Harris does argue that the disclosures in his loan file were inadequate under TILA.  Specifically, Plaintiff contends that itemized finance charges were not disclosed in a document entitled "ATTENTION CLOSING AGENT." (Doc. 67 at 26-29.)  Plaintiff maintains that these itemized finance charges

constitute "material disclosures."   (Doc. 67 at 28.)   The document referenced by the plaintiff, however, appears to be a document addressed to the closing agent and not the borrower.  Assuming the itemized finance charges referenced are "material disclosures," specific charges were enumerated in the document entitled "Itemization of Amount Financed," which was signed by Harris and included in the loan file delivered to him in December 2006.

However, the "term 'material disclosures' [for purposes of the right to rescind] means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in [12 C.F.R.] § 226.32(c) and (d)."   12 C.F.R. § 226.23(a)(3) n.48; *see also Hunter v. Richmond Equity*, 1987 WL 109703, *5 (N.D. Ala. 1987).  These amounts, including the total finance charge of $238,997.48, are all listed on the "Truth in Lending Disclosure Statement," which Harris also admits was delivered to him with the loan file in December 2006.

Because the Truth in Lending Disclosure Statement, Itemization of Amount Financed, and Notice of Right to Cancel were included in the loan

file delivered to Plaintiff in December 2006, and Plaintiff has failed to show that the requisite disclosures were inadequate, Harris's November 2007 rescission attempt was untimely.  Defendants are entitled to judgment as a matter of law with regard to Plaintiff's TILA rescission claim.

B.    Breach of Contract.

Plaintiff fails to make any argument regarding his breach of contract claim in response to Defendants' motions for summary judgment; therefore, the Court finds that Plaintiff's contract claim has been abandoned.  *See, e.g.*, *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")

C.    Fraud.

Finally, Harris argues that Defendants are liable for fraudulent misrepresentation and suppression under Alabama law.  In his response memorandum, however, Harris does not distinguish these claims.  Instead, Plaintiff writes that Defendants suppressed material facts by making fraudulent misrepresentations.  (Doc. 67 at 25.)  Plaintiff's fraud claims will

therefore be analyzed solely under the rubric of fraudulent misrepresentation.  The fraudulent suppression claim is dismissed.[3]

Harris concedes that, in order to prevail on his fraudulent misrepresentation claim, he must prove: "(1) that the defendant made a false representation concerning an existing material fact; (2) that the defendant made that misrepresentation while knowing that it was false, or made it recklessly, or made it with no knowledge as to its truth or falsity; (3) that the plaintiff reasonably relied on the misrepresentation[4]; and (4) that the plaintiff incurred damage proximately caused by the reliance."

---

[3]Even if the Court considered the claims separately, Defendants would be entitled to summary judgment on the fraudulent suppression claim.  Harris contends Defendants did not inform him of his rate terms and the fact that his second mortgage was not paid off by the loan in question.  This was information that could have been learned by reading the closing documents.  It is undisputed that Plaintiff can read, but he did not read the closing documents before he signed them.  Under Alabama law, then, there is no suppression.  *See, e.g., Locklear Dodge City, Inc. v. Kimbrell*, 703 So. 2d 303, 306 (Ala. 1997) ("[A] person who signs a contract is on notice of the terms therein and is bound thereby even if he or she fails to read the document."); *Robinson v. JMIC Life Ins. Co.*, 697 So. 2d 461, 462 (Ala. 1997); *Colburn v. Mid-State Homes, Inc.*, 255 So. 2d 865, 868-69 (Ala. 1972).

[4]In *McGriff v. Minn. Mutual Life Ins. Co.*, 127 F.3d 1410 (11th Cir. 1997), the Eleventh Circuit Court of Appeals outlines the Alabama courts' adoption of the "reasonable reliance" standard in 1983, application of a new standard of "justifiable reliance" in 1989, and return to the current "reasonable reliance" standard in 1997. *Id.* at 1414.

*Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 245-46 (Ala. 2000).
(Doc. 67 at 16.)

Plaintiff alleges four material misrepresentations: (1) Mazeika told him
that he would receive a 9.5%, 30-year fixed-rate mortgage; (2) someone told
him his second mortgage would be paid with this loan; (3) Boorsma told him
that his loan rate was 9.5%; and (4) Boorsma told him that he would be sent
a copy of his closing documents by others after she sent the documents to
the settlement agent for signature.  (Doc. 67 at 17-18.)

With regard to Boorsma's alleged misrepresentation that Harris would
be sent a copy of the closing documents by some other person or entity,
Plaintiff has not identified any damage proximately caused by his reliance
on that statement.  At that point, Plaintiff had signed the closing documents
without reading them and, as outlined by the Court above, if Harris did not
receive the documents at closing, he had three business days from the date
he did receive those documents to exercise his right of rescission under
TILA.

As for the remaining alleged misrepresentations, Plaintiff has not
shown that his reliance was reasonable under the circumstances.  "Under

the reasonable-reliance standard, if a consumer plaintiff, acting as a reasonably prudent person exercising ordinary care, would have discovered the true facts before acting on the alleged misrepresentation, then, as a matter of law, the plaintiff could not have relied on the misrepresentation." *Gilmore v. M & B Realty Co., L.L.C.*, 895 So. 2d 200, 209 (Ala. 2004) (internal quotations omitted).   After considering "the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties[, . . . . A] trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997).   "[I]t is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests." *Id*. at 433 (quoting *Monroe v. Pritchett*, 16 Ala. 785, 789 (1849)). "If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and

the maxim applies, 'volunti non fit injuria." *Id*.  (quoting *Monroe v. Pritchett*, 16 Ala. 785, 789 (1849)).

Plaintiff has an undergraduate degree in business and a master's degree in psychology.  He has served in the armed forces, and he admits he can read the English language.  Harris was also familiar with adjustable-rate mortgages because he signed one in 1997.  Moreover, Plaintiff admits throughout his deposition that he signed the closing documents at issue in this case without reading them, and there is no evidence of duress or physical or mental handicap that prevented Plaintiff from understanding what he was signing.

Assuming Plaintiff was told he was getting a 9.5%, fixed-rate loan that would pay off two mortgages, the information in the documents clearly contradicts these statements.   Harris signed a document entitled "Adjustable Rate Note."   On the third page of that document, approximately one inch above his signature, it reads: "CAUTION –- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT."  Plaintiff also signed a "Schedule of Real Estate Owned," which lists only one mortgage on his property.  If Harris had wanted to ensure that

he was receiving a 9.5%, fixed-rate interest loan, and that both of his mortgages were being paid, the documents by which he could have confirmed that information were sitting in front of him at the Jack's restaurant on January 20, 2006.  Harris has failed to introduce sufficient evidence that he acted reasonably under the circumstances.  *See also, e.g.*, *Kilpatrick v. Citibanc of Ala./Andalusia*, 494 So. 2d 39 (Ala. 1986); *First Nat'l Bank of Mobile v. Horner*, 494 So. 2d 419 (Ala. 1986).   Summary judgment, therefore, must be entered in favor of the defendants with regard to Plaintiff's claim of fraudulent misrepresentation.

V.     Conclusion.

For the reasons stated above, Defendants' motions for summary judgment will be granted in all respects.  A separate order will be entered.

Done this <u>20th</u> day of <u>March 2009</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297